IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

___

| | |
|---|---|
| JAMES SADLER, | ) |
| | ) |
| Plaintiff, | ) |
| v. | )   No. 1:22-cv-2203-STA-jay |
| | ) |
| TYSON FOODS, INC., | ) |
| | ) |
| Defendant. | ) |

___

**ORDER GRANTING IN PART, DENYING IN PART DEFENDANT'S MOTION TO DISMISS**
___

Plaintiff James Sadler is now a former employee of Defendant Tyson Foods, Inc. Plaintiff alleges that he sustained an on-the-job injury in November 2021 and requested workers compensation benefits. Days later, Defendant notified Plaintiff he was being terminated for failing to comply with a company policy requiring employees to receive a COVID-19 vaccine. Plaintiff's termination became final in January 2022. Plaintiff alleges two claims under Tennessee law: (1) that Defendant's decision to fire him violates a recent legislative enactment protecting employees who object to taking a COVID-19 vaccine and (2) that Defendant unlawfully retaliated against him for making a protected claim for workers compensation. Defendant has filed a Motion to Dismiss (ECF No. 7) both of Plaintiff's claims. The parties have fully briefed the issues, and the Motion is now ripe for determination. For the reasons set forth below, the Motion to Dismiss is granted as to Plaintiff's vaccine claim and denied as to his retaliatory discharge claim.

1

**BACKGROUND**

Plaintiff filed an initial Complaint (ECF No. 1-1) in the Circuit Court for Obion County, Tennessee, on February 18, 2022. For purposes of deciding Defendant's Rule 12(b)(6) Motion, the Court accepts as true the following well-pleaded facts. Plaintiff had worked in the maintenance department at Defendant's chicken processing factory in Union City, Tennessee, since 2008. (Compl. ¶¶ 5, 6.) Sometime in the fall of 2021, Defendant adopted a policy requiring all employees to receive a COVID-19 vaccine and announced that it would terminate any employee who refused to get the vaccine. (*Id*. ¶ 10.) In April 2021, Plaintiff had received the first dose of the Moderna SARS-CoV-2 vaccine at an immunization clinic in Nashville, Tennessee, and his second dose the following month at the same location. (*Id*. ¶¶ 8, 9.) Plaintiff subsequently lost his vaccination card. (*Id*. ¶ 11.) In order to comply with Defendant's mandatory vaccination policy, Plaintiff set out to gather medical records to demonstrate he had received both doses of his vaccine. (*Id*.)

On November 29, 2021, Defendant notified Plaintiff he was being terminated for failure to take the vaccine. (*Id*. ¶ 12.) Plaintiff responded by providing documentation from the Tennessee Department of Health, West Tennessee Healthcare, West Tennessee Medical Group, and the Metro Nashville-Davidson County Health Department, all to show that he had received the vaccine. (*Id*. ¶¶ 13, 14.) Defendant rescinded the termination and reconsidered the matter while it reviewed Plaintiff's records. (*Id.* ¶ 15.) Defendant eventually affirmed its initial decision to terminate Plaintiff's employment and notified him on January 14, 2022, that he was being fired for "gross misconduct." (*Id*. ¶ 16.) During his nearly 14-year tenure with Defendant, Plaintiff had never received a write-up or any other disciplinary action. (*Id*. ¶ 7.)

Plaintiff's "gross misconduct" over the vaccine was not the only factor in his termination, as far as Plaintiff sees it. The Complaint alleges that on the weekend prior to November 29, 2021, the date Defendant first informed him would be terminated for failing to get the vaccine, Plaintiff had worked three 12-hour shifts. (*Id.* ¶ 19.) During one of his shifts, Plaintiff had suffered an injury to his hand and wrist and reported the injury to his manager. (*Id.* ¶ 20.) According to the Complaint, Defendant refused to complete workers compensation paperwork for Plaintiff's work-related injury. (*Id.* ¶ 20.) Plaintiff alleges that the real reasons for his termination were that Plaintiff reported a workers comp injury and that Defendant perceived that Plaintiff had not been vaccinated.

The Complaint alleges from these factual premises that Plaintiff's termination violated Tenn. Code Ann. § 14–2–102(a), Tennessee's recently enacted protection for individuals who harbor an objection to taking a COVID-19 vaccine. Plaintiff separately alleges that Defendant retaliated against him because he made a protected workers compensation claim. Plaintiff seeks reinstatement, an award of back pay and front pay, compensatory damages, and punitive damages for his wrongful termination. On March 31, 2022, Defendant removed the case to federal court pursuant to 28 U.S.C. § 1332(a) based on the parties' diversity of citizenship and the amount in controversy as well as 28 U.S.C. § 1442(a)(1), which permits removal of a civil action asserted against a person acting under the direction of a federal officer.

In its Motion to Dismiss, Defendant argues that Plaintiff's opening pleading fails to state a claim for relief. Plaintiff's vaccine claim under Tennessee law fails to plead the elements of the statute. While it is true that Tenn. Code Ann. § 14–2–102 prohibits employers from taking adverse employment actions against employees who refuse to receive a COVID-19 vaccine, Plaintiff makes no such allegation. Plaintiff claims he did, in fact, take the vaccine. The statute

3

only applies to employees who have some objection to the vaccine, not employees like Plaintiff who received the vaccine but cannot come forward with proper documentation. The Court should therefore dismiss the claim. As for the workers comp retaliation claim, Defendant argues that the Complaint fails to allege a causal connection between Plaintiff's workplace injury and his termination. According to Defendant, the Complaint is speculative and alleges no facts to show that Plaintiff's need for workers comp was a substantial factor in his termination. Defendant argues then that the Court should dismiss the Complaint in its entirety.

Plaintiff answers that the Complaint has plausibly alleged both claims. Plaintiff contends that Defendant fired him because Plaintiff did not provide adequate documentation of his vaccinations. In other words, Defendant perceived or regarded Plaintiff as a vaccine objector and terminated him for failing to take the vaccine. The allegations show that Plaintiff fell within the ambit of the statute's protections. Likewise, Plaintiff counters that the Complaint states a workers comp retaliation claim. Defendant has merely challenged the strength of the inference of causation. That is a matter better addressed at summary judgment once the parties have engaged in discovery and developed the proof surrounding the workers comp issue. In its reply, Defendant reiterates its argument that Tennessee law does not protect employees who merely fail to provide satisfactory documentation to show they have received their vaccines. And Defendant argues that Plaintiff's allegations fail to meet the plausibility standard for pleading in federal court under *Twombly* and *Iqbal*.

## **STANDARD OF REVIEW**

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the pleadings as true

and construe all of the allegations in the light most favorable to the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992). However, legal conclusions or unwarranted factual inferences need not be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim." *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly,* 550 U.S. at 555). In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In this case the Court has subject-matter jurisdiction by virtue of the parties' diversity of citizenship and the amount in controversy. 28 U.S.C. § 1332. A federal court sitting in diversity applies the law of the forum state, including the forum's choice-of-law rules. *Atl. Marine Constr. Co. Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 582 (2013); *Standard Fire*

*Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 692 (6th Cir. 2013).  As in any case where the Court has jurisdiction based on the parties' diversity of citizenship and Tennessee law applies, the Court has as its task to anticipate or predict how the Tennessee Supreme Court would decide the issues based on all of the available data.  *Fox v. Amazon.com, Inc.*, 930 F.3d 415, 422 (6th Cir. 2019) (citing *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607 (6th Cir. 2012)).  This includes the published opinions of the Tennessee Court of Appeals.  *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 358 (6th Cir. 2018) (citing Tenn. Sup. Ct. R. 4(G)(2) for the proposition that a published opinion of the Tennessee Court of Appeals is "controlling authority for all purposes unless and until such opinion is reversed or modified by a court of competent jurisdiction").

## ANALYSIS

### I. COVID-19 Vaccine Status Pursuant to Tenn. Code Ann. § 14–2–102(a)

The first issue presented is whether Plaintiff has stated a plausible claim for relief under Tennessee statutory law based on Defendant's decision to terminate his employment over the COVID-19 vaccine.  The Tennessee General Assembly enacted Title 14 of the Tennessee Code Annotated, effective November 12, 2021, to create a number of protections related to COVID-19.  Tenn. Code Ann. § 14–1–103 ("The purpose of this title is to safeguard the constitutional rights and liberty interests of persons during the COVID-19 pandemic.").  Plaintiff brings his claim under Tenn. Code Ann. § 14–2–102(a), the Title 14 provision addressed to COVID-19 vaccination status.  That section prohibits a "private business, governmental entity, school, or local education agency" from "compel[ling] or otherwise tak[ing] an adverse action against a person to compel the person to provide proof of vaccination if the person objects to receiving a COVID-19 vaccine for any reason." § 14–2–102(a).  Title 14 grants a person injured as a result

of such a violation a private right of action to seek "injunctive relief and to recover compensatory damages and reasonable attorneys' fees against an alleged violator." § 14–6–103.

The Court construes Tenn. Code Ann. § 14–2–102(a) to require a person injured under the section to prove the following elements: (1) that a "private business" or other covered entity (2) compelled the person to provide "proof of vaccination" or, in the alternative, took an "adverse action" against the person to compel the person to provide "proof of vaccination" (3) over the person's objection to receiving a COVID-19 vaccine *for any reason*. Title 14 defines several of the terms found in Tenn. Code Ann. § 14–2–102(a), though none of them are actually in dispute at the pleadings stage of this case. Defendant meets the statutory definition of a "private business." Tenn. Code Ann. § 14–1–101(15) (defining a "private business" as a "corporation . . . engaged in business or commerce" in Tennessee). Defendant's decision to terminate Plaintiff's employment constitutes an "adverse action." § 14–1–101(1)(B) (defining "adverse action" to include a "[d]ischarge . . . [of] an employee,"). And Defendant took an "adverse action" against Plaintiff to compel him to provide "proof of vaccination," that is, "physical documentation or digital storage of a person's receipt of a COVID-19 vaccine." § 14–1–101(16).

The only element actually in dispute is whether Plaintiff can show that he "object[ed] to receiving a COVID-19 vaccine for any reason." § 14–2–102(a). Tenn. Code Ann. § 14–2–102(a) applies to protect individuals from any kind of adverse action, including losing their jobs, but only where the individual has raised an objection to taking a COVID-19 vaccine. The Court notes that the statute does not specify how a person must raise the objection or require anything like formal notice of the objection. The person's objection apparently need not be in writing or presented in any specific manner. Perhaps more important, the objection may rest on any number

of grounds. The statute's phrase "for any reason" is expansive. There is no qualifying or limiting language to cover only specific types of objections. The legislature could have decided to protect only conscience objections to the use of a vaccine on moral or religious grounds, or medical objections about the need or efficacy of a vaccine generally or in a particular case. But the statute goes further and protects individuals with any sort of objection, presumably even the most unfounded or frivolous ones. A simple fear of needles might suffice. *See* Edward G. Phillips & Brandon L. Morrow, *Not-So-Conscientious Objections: Tennessee's New Law to Combat Vaccine Mandates*, 58 Tenn. Bar J. 44, 45 (Feb. 2022) ("Speaking of objections, on what grounds can employees object to the vaccine? The answer: on any ground they want."). The critical point is the statute only protects an employee like Plaintiff "if the person objects to receiving a COVID-19 vaccine," no matter what the reason. § 14–2–102(a).

In order to receive the benefit of § 14–2–102(a), an individual must articulate some objection to being vaccinated with a COVID-19 vaccine. Without some allegation to show that Plaintiff held such an objection and therefore fell within the protected class defined in the statute, Plaintiff's Complaint fails to state a claim under Tenn. Code Ann. § 14–2–102(a). Plaintiff has not alleged that he refused the vaccine or had any objection whatsoever to getting vaccinated. Plaintiff actually alleges that he received two doses of the Moderna vaccine in 2021 and that he provided Defendant with proof of his vaccination. According to the Complaint, Defendant dismissed Plaintiff for "gross misconduct" after Plaintiff could not produce a vaccine card and submitted other medical documents as a substitute. The Court concludes that the Complaint has not alleged one of the essential elements of the cause of action granted under Tenn. Code Ann. § 14–2–102(a).

Plaintiff responds that whether he actually objected to the vaccine or not, Defendant perceived him as an objector. Other than asserting this fact in his brief, however, Plaintiff has not alleged any such fact in his Complaint. The pleadings allege that Defendant had a "perception" of Plaintiff but only a "perception that Plaintiff had not been vaccinated." Compl. ¶ 22 ("The *real* reasons for the termination were Plaintiff's reporting of a workers' compensation injury and Defendant's perception that Plaintiff had not been vaccinated." (emphasis in original)). The Complaint also alleges that Defendant notified Plaintiff that the grounds for his termination was "gross misconduct," apparently "for not taking the Covid vaccination." *Id.* ¶¶ 16, 18. Nothing in these allegations, even viewed in a light most favorable to Plaintiff, supports Plaintiff's argument that Defendant regarded him as an individual with an objection to the COVID-19 vaccine. They merely show that Defendant rejected Plaintiff's documentation and reached the conclusion that Plaintiff had not received the vaccine. The Complaint implies that Defendant's determination was unreasonable and perhaps outright mistaken. Even so, the allegations do not bring Plaintiff's case within the scope of Tenn. Code Ann. § 14–2–102(a).

Tennessee law extends its protections to employees with an objection "to receiving a COVID-19 vaccine for any reason." Otherwise, an employer like Defendant would not be able to take an "adverse action" against employees who simply disregarded a company's vaccine mandate or just neglected to get the shot. In the absence of well pleaded facts to show that Plaintiff had an objection to vaccination, any objection at all, Plaintiff does not have a claim under Tenn. Code Ann. § 14–2–102(a). Therefore, Defendant's Motion to Dismiss is **GRANTED** on this issue.

**II. Retaliatory Discharge**

The other issue presented is whether the Complaint states a plausible claim for retaliatory discharge. In Tennessee, "an employee or an employer may terminate an employment-at-will relationship at any time, with or without good cause." *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 648 (Tenn. 1995) (citing *Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994); *Chism v. Mid-South Milling Co.*, 762 S.W.2d 552, 555 (Tenn. 1988)). In *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441 (Tenn. 1984), however, the Tennessee Supreme Court carved out an exception to the employment at-will rule and held that an action in tort for retaliatory discharge is available to a person whose employment has been terminated for asserting a claim for workers compensation benefits. A plaintiff bringing such a claim must prove the following elements to show retaliatory discharge: (1) the plaintiff was an employee of the defendant at the time of the injury; (2) the plaintiff made a claim against the defendant for workers compensation benefits; (3) the defendant terminated the plaintiff's employment; and (4) the claim for workers compensation benefits was a substantial factor in the employer's motivation to terminate the employee's employment." *Conatser*, 920 S.W.2d at 648 (citing *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn. 1993)).

The Court holds that Plaintiff's Complaint has pleaded each of these elements. Defendant does not dispute the first three elements: Plaintiff was Defendant's employee, Plaintiff made a claim for workers compensation, and Defendant terminated Plaintiff's employment. Defendant argues in its Motion to Dismiss that Plaintiff has not alleged enough facts to show that Plaintiff's workers comp claim was a substantial factor in his termination. The Court disagrees.

Under Tennessee law, courts consider this element in light of the following circumstances:

> (1) temporal proximity of the adverse action to the complaint; (2) a pattern of workplace antagonism following a complaint; (3) an employer's failure to adhere to established company policy in dealing with the employee; (4) discriminatory treatment when compared to similarly situated employees; (5) evidence of a good work history and high or solid performance evaluations of the employee; (6) sudden and marked changes in an employee's performance evaluations after the exercise of the employee's protected rights; and (7) evidence tending to show that the [employer's] stated reason for discharge was false.

*Sykes v. Chattanooga Housing Auth.*, 343 S.W.3d 18, 29–30 (Tenn. 2011); *see also Canady v. Gillette Co.*, 547 F. App'x 670, 679–80 (6th Cir. 2013). In this case the Complaint plausibly alleges more than one circumstance to suggest that Defendant's decision was retaliatory.

First, there was extremely close temporal proximity between Plaintiff's protected activity and Defendant first notifying Plaintiff of its intent to discharge him. The Complaint implies that Plaintiff reported his workplace injury sometime over the weekend of November 27-28, 2021, though without specifying an exact date of the report. Plaintiff then learned of Defendant's decision to fire him on Monday, November 29, 2021. The Tennessee Supreme Court has held that temporal proximity, without more, "does not make a *prima facie* case." *Conaster*, 920 S.W.2d at 648; *see also Ellis v. Buzzi Unicem USA*, 293 F. App'x 365, 375 (6th Cir. 2008) (holding that temporal proximity is a "mere[ ] aid" in establishing a *prima facie* case for retaliatory discharge). Nevertheless, while the close timing may not, standing alone, prove Plaintiff's case, a temporal gap of one or two days at the very least supports an inference that one event factored into the other.

Second, Plaintiff's positive work history with Defendant is also a factor. The Complaint alleges that Plaintiff had worked for Defendant since 2008 and never received discipline of any kind prior to learning of Defendant's decision to fire him on November 29, 2021. Plaintiff's significant tenure (over 13 years) and the absence of any prior issues with his job performance or

his conduct tends to suggest a connection between his protected activity and Defendant's decision to terminate him.

Finally, the Complaint alleges enough facts to cast doubt on Defendant's stated reason for Plaintiff's discharge. While Defendant fired Plaintiff for failing to get vaccinated, Plaintiff alleges that he was vaccinated and that he gave Defendant the documentation to prove it. The Complaint gives the exact dates in 2021 on which Plaintiff received both doses of the Moderna vaccine and the name and location of the clinic where he received the vaccine. Plaintiff admits he subsequently misplaced his vaccination card. After Defendant announced its mandatory vaccination policy, Plaintiff took steps to gather records from a number of sources to document the fact that he had been vaccinated. As soon as Defendant notified Plaintiff of its intent to terminate his employment in November 2021, Plaintiff furnished Defendant with the records he had to show that he had received the vaccine. The Complaint even alleges that Defendant reconsidered its decision to terminate Plaintiff, only later to affirm its initial decision and discharge him anyway. Accepting the allegations of the Complaint as true, Plaintiff was vaccinated and provided Defendant with proof to show that he was vaccinated. The fact that Defendant remained steadfast in its decision to fire Plaintiff for not taking the vaccine and in the face of records showing that Plaintiff had had the vaccine tends to show that Defendant's stated reason for firing Plaintiff was false.

Taken together, the temporal proximity between Plaintiff's workers comp claim and Defendant's decision to terminate him, Plaintiff's otherwise good disciplinary record as an employee, and Defendant's determination that Plaintiff had not been vaccinated when the evidence showed that he had, all create an inference that Plaintiff's claim for workers compensation benefits was a substantial factor in Defendant's motivation to terminate his

employment. *Conatser*, 920 S.W.2d at 648. The Court concludes then that the Complaint states a plausible claim of retaliatory discharge. Therefore, Defendant's Motion to Dismiss is **DENIED** as to this issue.

## CONCLUSION

The Complaint fails to allege all of the essential elements of a claim under Tenn. Code Ann. § 14–2–102(a) but does allege the elements of a claim for retaliatory discharge. Therefore, Defendant's Motion to Dismiss is **GRANTED in part, DENIED in part**.

**IT IS SO ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: May 27, 2022.